Teague I. Donahey (ISB# 9963)
TIDonahey@hollandhart.com
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, Idaho 83702
Tel: (208) 383-3988
Fax: (208) 343-8869

Attorneys for Plaintiff
RHINO METALS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RHINO METALS, INC., an Idaho corporation,<br><br>        Plaintiff,<br>v.<br><br>STURDY GUN SAFE, INC., a California corporation,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT**<br><br>JURY DEMANDED |

Plaintiff Rhino Metals, Inc. ("Rhino"), by and through its attorneys, Holland & Hart LLP, for its Complaint against Defendant Sturdy Gun Safe, Inc. ("Defendant") alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.      This is an action for purposeful and willful infringement of Rhino's IRONWORKS™ intellectual property rights, which constitutes unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims under the statutory and common laws of Idaho, all arising from Defendant's unauthorized use of the IRONWORKS™ intellectual property rights in connection

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of Defendant's gun safes.

2. Rhino seeks injunctive and monetary relief.

## JURISDICTION

3. Because this action arises under the Federal Lanham Act, asserts substantially related claims arising under state law, and seeks damages in excess of $75,000 between citizens of different states, this court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4. Defendant is subject to personal jurisdiction in this judicial district in that it has sufficient minimum contacts with this judicial district, for reasons including but not limited to the fact that Defendant has purposefully directed its actions at the state of Idaho by willfully infringing Rhino's intellectual property rights, in addition to other actions; Defendant's conduct has caused harm, and continues to cause harm, to Rhino in this judicial district; and the exercise of jurisdiction over Rhino is reasonable under the circumstances.

## VENUE

5. Venue is proper in this judicial district at least under 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in this judicial district as it is subject to personal jurisdiction in this district with respect to this action and, moreover, because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6. Rhino is an Idaho corporation with its principal place of business at 607 Garber Street, Caldwell, Idaho 83605.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

7.      Upon information and belief, Defendant is a California corporation with its principal place of business at 2030 S. Sarah Street, Fresno, California 93721.

## FACTUAL ALLEGATIONS

### A.      Rhino and its Distinctive IRONWORKS™ Gun Safes

8.      Rhino is a U.S.-owned manufacturing company founded by Don Suggs in Caldwell, Idaho, in 1995. Rhino is in the business of manufacturing and selling metal gun safes, toolboxes, and the like.

9.      Initially, Rhino began as a small-town metal fabrication job shop. In 1999, Mr. Suggs's father asked him to make a gun safe. His father wanted a way to keep his firearms out of the reach of his grandchildren. Mr. Suggs researched existing gun safe designs, developed his own design, and then built a small production run to test the market.

10.     Rhino's gun safes were extremely successful, and, by 2006, Rhino's gun safes were being nationally distributed through Tractor Supply Company, a retail chain with locations across the United States. By 2008, Rhino's gun safe products were being widely distributed through Costco Wholesale. Today, Rhino has matured and grown into a large, well-known manufacturer distributing gun safes throughout the United States and Canada. Gun safe brands currently sold by Rhino include the RHINO™, KODIAK™, and IRONWORKS™ brands.

11.     In addition to selling its products through direct-to-consumer retail and other distribution channels, Rhino is also an Original Equipment Manufacturer (OEM) of parts for industry-leading companies in a wide variety of industries. Rhino's manufacturing plant in Caldwell, Idaho produces quality metal parts used in equipment and buildings all over the world.

12.     Over the years, the company has introduced a number of industry-changing gun safe innovations, including the Swingout Rack and the beautiful IRONWORKS™ product lines.

As a result, Rhino is now one of the leading U.S. gun safe manufacturers in terms of innovation, quality, and customer service.

13. Rhino's IRONWORKS™ gun safes were first introduced in 2013 and have been advertised and sold on a nationwide basis ever since. Rhino's IRONWORKS™ gun safes have achieved significant sales and have become Rhino's most commercially-successful products.

14. Rhino's IRONWORKS™ gun safes are manufactured with a distinctive antique look and feel, including distressed metal surfaces designed to accentuate the natural grain of the steel, as well as decorative metal plates and rivets. The foregoing features, both individually and collectively, constitute the IRONWORKS™ DESIGN FEATURES, as that term is used herein. One example of a Rhino IRONWORKS™ gun safe, the IRONWORKS™ CIWD6040X 60" H x 40" W x 25" D gun safe, is shown below:



COMPLAINT AND DEMAND FOR JURY TRIAL - 4

15. The IRONWORKS™ DESIGN FEATURES are not essential to the use or purpose of the IRONWORKS™ gun safes and do not affect their quality or reduce their cost. Rather, the features are non-functional and cosmetic. Because the IRONWORKS™ DESIGN FEATURES are non-functional and cosmetic, competitors are free to manufacture and sell gun safes having different design features, and, in fact, there are any number of gun safes having different design features that have been and continue to be commercially successful in the marketplace.

16. Since the introduction of Rhino's IRONWORKS™ gun safes in 2013, Rhino has used the IRONWORKS™ DESIGN FEATURES in commerce throughout the United States continuously in connection with its manufacture, distribution, provision, offering for sale, sale, marketing, advertising and promotion of safes and gun safes. For example, Rhino has advertised, marketed, and promoted IRONWORKS™ gun safes and the IRONWORKS™ DESIGN FEATURES extensively throughout the United States since 2013.

17. When Rhino introduced its IRONWORKS™ gun safes in 2013, Rhino was the only gun safe manufacturer making and selling gun safes having design features resembling the IRONWORKS™ DESIGN FEATURES. Accordingly, consumers, manufacturers, distributors, and sellers of gun safes rapidly came to associate these features with Rhino and recognize these features as identifying Rhino's gun safe products in particular.

18. Many third parties recognized and advertised the unique and one-of-a-kind look of Rhino IRONWORKS™ gun safes having the IRONWORKS™ DESIGN FEATURES.

19. As a result of Rhino's widespread, continuous, and exclusive use of the IRONWORKS™ DESIGN FEATURES since 2013 to identify its goods and Rhino as their source, Rhino owns valid and subsisting intellectual property rights related to the IRONWORKS™ DESIGN FEATURES, which are distinctive to the consuming public.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

20. Rhino has expended substantial time, money, and resources marketing, advertising, and promoting the goods sold under the IRONWORKS™ DESIGN FEATURES including through its marketing, advertising, and promotional efforts and channels for goods or services under its mark, which include but are not limited to advertising via print, conventions and gun shows, and the Internet, including social media, and sales and distribution both directly via, *e.g.*, Rhino's website, and indirectly via, *e.g.*, third-party websites such as Amazon.com and retailers throughout the United States and Canada.

21. Rhino's IRONWORKS™ gun safe products and their IRONWORKS™ DESIGN FEATURES are of high quality, and as a result of Rhino's expenditures and efforts, the IRONWORKS™ DESIGN FEATURES have come to signify the high quality of Rhino's IRONWORKS™ products, and have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Rhino.

**B.     Defendant's Unlawful Activities**

22. Upon information and belief, Defendant is engaged in the business of manufacturing, selling, and repairing safes, and gun safes in particular.

23. Upon information and belief, Defendant markets and sells its gun safes at least directly, through its commercial website, social media websites, and third-party websites such as Amazon.com.

24. Defendant's business, therefore, directly competes and significantly overlaps with Rhino's, at least in that Defendant sells the same kinds of gun safe products to the same kinds of gun safe consumers through similar sales channels, using the same types and channels of advertising and marketing.

25. In 2017, without Rhino's authorization, and well after Rhino had acquired protectable exclusive rights in its IRONWORKS™ DESIGN FEATURES, Defendant adopted

COMPLAINT AND DEMAND FOR JURY TRIAL - 6

and began using nearly identical design features on certain gun safes sold in United States commerce (the "Infringing Goods"). The Infringing Goods include all gun safes that Defendant markets and sells with the following "finishes":  (1) "Distressed Metal"; (2) "Antique Clear"; (3) "Antique Chest"; and (4) "Old Hollywood."

26. The overall look and feel of the Infringing Goods adopted and used by Defendant is identical to and/or confusingly similar to Rhino's IRONWORKS™ DESIGN FEATURES.

27. Like Rhino's IRONWORKS™ products, the Infringing Goods have an antique look and feel achieved at least in part by using distressed metal surfaces, decorative metal plates, and/or decorative rivets, and they attempt to replicate the distinctive IRONWORKS™ DESIGN FEATURES in an effort to exploit the significant commercial success experienced by Rhino's IRONWORKS™ gun safes.

28. Upon information and belief, Defendant has been engaged in the manufacture, distribution, provision, advertising, promotion, offering for sale, and sale of Infringing Goods since approximately July 2017—approximately four years after the IRONWORKS™ products were introduced into the marketplace by Rhino.

29. On or about July 13, 2017, Defendant's Facebook page, [www.facebook.com/sturdygunsafe/](www.facebook.com/sturdygunsafe/), announced a "NEW FINISH OPTION!" that it was "prototyping" with "a distressed look," metal plates in the corner regions, and a "weld rivet design." Defendant provided the following image of a gun safe with this "distressed look" finish option:



30.     Immediately, viewers of Defendant's Facebook post recognized that the Infringing Goods constituted an intentional copy of Rhino's IRONWORKS™ gun safes. In response to these comments, Defendant expressly acknowledged the "similarities" between the Infringing Goods and Rhino's products, which it admitted were "cosmetic," and it did not dispute that it had intentionally copied the IRONWORKS™ DESIGN FEATURES.   Defendant instead attempted to distinguish itself by price on the basis of steel thickness.  A copy of this exchange on Facebook appears below:



> **Joseph Key** Why copy a rhino safe? Your safes are way better than what they offer. At least the one I bought from you is.
>
> Like · Reply · 1y · Edited



>> **Sturdy Safe Manufacturing** We are only talking cosmetic changes. This is one of a few we will be coming out with. Even though there are notable differences, I do see similarities to the Rhino and Fort Knox distressed finished safes. Like the car industry, or cell phone industry, you need to keep reinventing the wheel on options. Even with these upgrades, no one will come close to the steel thickness for the price.
>>
>> Like · Reply · 1y    👍 3

31.   In the same July 2017 Facebook exchange, Defendant also admitted the following:



> **Dave Montez** What are the advantages of using rivets versus weld for the steel plate around the lock (or vice versa)?
>
> Like · Reply · 1y



>> **Sturdy Safe Manufacturing** They are actually decorative welds that mimic bolt heads.
>>
>> Like · Reply · 1y    👍 1

32.   In an August 30, 2018 Facebook post, Defendant showed a picture of one of its gun safes having a distressed metal exterior, but lacking decorative metal plates and rivets, explaining that it was a "special order" under which the customer saved money "by not getting the added plates . . . and rivets around the top and bottom of the body," confirming again that the IRONWORKS™ DESIGN FEATURES that it had copied are merely cosmetic options, unnecessary to the operation of the gun safes, and non-functional.

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

33. Additionally, until recently Defendant's website included a blog entry dated July 7, 2018, entitled "Best Looking Safes Currently on the Market." That blog entry, which has since been deleted, stated:

> **Being in the gun safe industry as long as we have <u>makes us very knowledgeable about our competitors and what they have to offer</u>, which includes the ones we feel are the most attractive.**
>
> **One can say we are queer about good looking safes and have kept a collection of favorites we will be sharing with you now.**
>
> **As you will see below, the ones we favor the most have <u>unique looking features</u> that go beyond the standard high gloss finish that is usually seen.**

(Emphases added.) Defendant's blog entry then depicted some of Defendant's Infringing Products, stating that their finishes were "unique and alluring," and that the Infringing Products' "looks are accomplished by adding various types of steel plate to the exterior of the body, as well as, welds formed into heavy duty looking accent rivets." Next, the blog entry expressly compared the appearance of the Infringing Products to that of the Rhino IRONWORKS™ gun safes, which had been sold in the market since 2013. The blog entry contained the following image of Rhino IRONWORKS™ gun safes:



COMPLAINT AND DEMAND FOR JURY TRIAL - 10

34. The blog entry then stated:

> **Kodiak or Rhino safes offer a <u>similar look</u> to Sturdy Safes Distressed Metal finish.  <u>They accomplish this look by welding thin steel plate with decorative rivets, then distress the body</u>.**

(Emphases added.)

35. After becoming aware of the Infringing Products and their unauthorized copying of the IRONWORKS™ DESIGN FEATURES, on September 11, 2018, Rhino through its counsel sent a cease and desist letter to Defendant objecting to Defendant's use of the IRONWORKS™ DESIGN FEATURES.  To date, Defendant continues to advertise and sell the Infringing Products.

36. Examples of the Infringing Products that are currently being sold on Defendant's commercial website, www.sturdysafe.com, are depicted below:



COMPLAINT AND DEMAND FOR JURY TRIAL - 11



37. Further, with respect to each of these four finishes, Defendant's website states: "If you ordered a package with a 3/16" thick plate added to the whole door, the safe will have weld rivet detailing around the perimeter of the door." Defendant's Facebook page provides images of Defendant's Infringing Products with weld rivet detailing around the perimeter of the door, one example of which is shown below:



COMPLAINT AND DEMAND FOR JURY TRIAL - 12

38. Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's gun safes and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's safes originate from, are associated or affiliated with, or otherwise authorized by Rhino.

39. Defendant's infringing acts as alleged herein have been willful with the deliberate intent to trade on the goodwill of Rhino's IRONWORKS™ DESIGN FEATURES, cause confusion and deception in the marketplace, and divert potential sales of Rhino's products to Defendant.

40. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Rhino and to its valuable reputation and goodwill with the consuming public for which Rhino has no adequate remedy at law.

## COUNT ONE

### (Federal Trade Dress Infringement/Unfair Competition)

41. Rhino repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

42. The IRONWORKS™ DESIGN FEATURES constitute protectable trade dress possessing secondary meaning because gun safe consumers associate those features with Rhino as a source of goods.

43. Defendant intentionally copied the IRONWORKS™ DESIGN FEATURES when it developed the Infringing Products.

44. Defendant's unauthorized use in commerce of the IRONWORKS™ DESIGN FEATURES in connection with the Infringing Goods as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely

to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Rhino, or that Defendant is in some way affiliated with or sponsored by Rhino.

45. The IRONWORKS™ DESIGN FEATURES are non-functional.

46. Defendant's unauthorized use in commerce of the IRONWORKS™ DESIGN FEATURES in connection with the Infringing Goods as alleged herein constitutes unfair competition, use of a false designation of origin, and misleading description and representation of fact.

47. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Rhino.

48. Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Rhino, and to its goodwill and reputation, and will continue to both damage Rhino and confuse the public unless enjoined by this court. Rhino has no adequate remedy at law.

50. Rhino is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO

### (Common Law Trade Dress Infringement/Unfair Competition)

51. Rhino repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

COMPLAINT AND DEMAND FOR JURY TRIAL - 14

52. Defendant's conduct as alleged herein constitutes common law trade dress infringement and unfair competition.

53. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Rhino, and to its goodwill and reputation, and will continue to both damage Rhino and confuse the public unless enjoined by this court.  Rhino has no adequate remedy at law.

54. Rhino is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

## COUNT THREE

### (Dilution Under Idaho Code § 48-513)

55. Rhino repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

56. The IRONWORKS™ DESIGN FEATURES constitute trade dress that is famous in the state of Idaho within the meaning of Idaho Code § 48-513.

57. Subsequent to the IRONWORKS™ DESIGN FEATURES becoming famous in state of Idaho, Defendant adopted substantially similar trade dress in connection with the Infringing Goods, which will cause and/or has caused dilution of the distinctive quality of the trade dress associated with the IRONWORKS™ DESIGN FEATURES in violation of Idaho Code § 48-513.

58. Defendant's acts were willfully intended to trade on Rhino's reputation and to cause dilution of Rhino's trade dress.

59. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Rhino, and to its goodwill and reputation, and will continue to both damage Rhino and confuse the public unless enjoined by this court.  Rhino has no adequate remedy at law.

60. Rhino is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Idaho Code §§ 48-513 and 48-514, together with prejudgment and post-judgment interest.

WHEREFORE, Rhino requests judgment against Defendant as follows:

1. That Defendant has violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

2. That Defendant has committed trade dress infringement and unfair competition under Idaho's common law;

3. That Defendant has violated Idaho Code § 48-513;

4. That Rhino is entitled to an injunction prohibiting the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   a. manufacturing, distributing, providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise or promote the Infringing Goods or any other goods or services having the IRONWORKS™ DESIGN FEATURES or any other trade dress that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the IRONWORKS™ DESIGN FEATURES;

   b. engaging in any activity that infringes Rhino's rights in its IRONWORKS™ DESIGN FEATURES;

   c. engaging in any activity constituting unfair competition with Rhino;

COMPLAINT AND DEMAND FOR JURY TRIAL - 16

   d. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Rhino, or (ii) Rhino's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

   e. using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Rhino or tend to do so;

   f. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the IRONWORKS™ DESIGN FEATURES or any other mark that infringes or is likely to be confused with Rhino's IRONWORKS™ DESIGN FEATURES, or any other goods or services of Rhino; and

   g. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f);

  5. That Rhino is entitled to such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored,

COMPLAINT AND DEMAND FOR JURY TRIAL - 17

authorized, or franchised by or associated, affiliated, or otherwise connected with Rhino or constitute or are connected with Rhino's goods;

6. That Defendant is ordered to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the IRONWORKS™ DESIGN FEATURES or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Rhino's IRONWORKS™ DESIGN FEATURES, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the IRONWORKS™ DESIGN FEATURES or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Rhino's IRONWORKS™ DESIGN FEATURES, and to immediately remove them from public access and view;

7. That Defendant is ordered to recall and deliver up for destruction all of the Infringing Goods, and any other goods, packaging, shopping bags, containers, advertisements, [promotions, signs, displays, and related materials incorporating or bearing the IRONWORKS™ DESIGN FEATURES or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Rhino's IRONWORKS™ DESIGN FEATURES;

8. That Defendant is ordered to file with the Court and serve upon Rhino's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such

COMPLAINT AND DEMAND FOR JURY TRIAL - 18

extended period as the Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith;

9. Awarding Rhino an amount three times the amount of its actual damages;

10. Awarding Rhino all profits realized by Defendant from its wrongful acts, enhanced as appropriate to compensate Rhino for the damages caused thereby;

11. Awarding Rhino punitive and exemplary damages as the court finds appropriate to deter any future willful infringement;

12. Awarding Rhino its costs and reasonable attorneys' fees;

13. Awarding Rhino interest, including prejudgment and post-judgment interest, on the foregoing sums; and

14. Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Rhino demands trial to a jury on all issues so triable.

DATED:  October 26, 2018

        HOLLAND & HART LLP

        By /s/ *Teague I. Donahey*
          Teague I. Donahey

        Attorneys for Plaintiff
        RHINO METALS, INC.