UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RHINO METALS, INC., | |
| Plaintiff/Counterclaimant, | Case No. 1:18-CV-00474-JCG |
| v. | 1:19-CV-00063-JCG |
| STURDY GUN SAFE, INC., | |
| Defendant/Counterclaim-Defendant. | |

**OPINION AND ORDER**

This action concerns competitors who manufacture metal gun safes.  Before the

Court are cross-motions for summary judgment for claims of unfair competition, dilution,

and infringement of trade dress and design patents, as well as several pending procedural

motions.  Sturdy Gun Safe, Inc.'s Mot. Summ. J. ("Sturdy Gun Safe's Motion for

Summary Judgment" or "Sturdy Gun Safe's MSJ") (Dkt. 56); Rhino Metals, Inc.'s Cross-

Mot. Summ. J. ("Rhino Metals' Cross-Motion for Summary Judgment" or "Rhino

Metals' Cross-MSJ") (Dkt. 59); Rhino Metals, Inc.'s First Motion to Seal ("Rhino

Metals' Motion to Seal I") (Dkt. 63); Rhino Metals, Inc.'s Second Motion to Seal

("Rhino Metals' Motion to Seal II") (Dkt. 100); Sturdy Gun Safe, Inc.'s Motion to Seal

("Sturdy Gun Safe's Motion to Seal") (Dkt. 77); Sturdy Gun Safe, Inc.'s Motion to

Exclude Expert Witness Testimony (Dkt. 54); Rhino Metals, Inc.'s Motion for Leave to

File Sur-Reply in Opposition to Sturdy Gun Safe, Inc.'s Motion to Exclude Expert

**OPINION AND ORDER - 1**

Witness Testimony ("Rhino Metals' Motion to File Sur-Reply") (Dkt. 73); and Sturdy

Gun Safe, Inc.'s Motion to Supplement the Record in Opposition to Rhino Metals, Inc.'s

Cross-Motion for Summary Judgment and in Support of Sturdy Gun Safe, Inc.'s Motion

for Summary Judgment ("Sturdy Gun Safe's Motion to Supplement Record") (Dkt. 101).

After due consideration, the Court denies both motions for summary judgment due to the

existence of triable, genuine issues of material fact.  The Court grants Rhino Metals'

Motion to Seal I, Sturdy Gun Safe's Motion to Seal, Rhino Metals' Motion to File Sur-

Reply, and Sturdy Gun Safe's Motion to Supplement Record.  The Court grants in part

and denies in part Rhino Metals' Motion to Seal II.  The Court denies in part and defers

in part Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony.

Plaintiff and Counterclaimant Rhino Metals, Inc. ("Rhino Metals") filed a

complaint against Defendant and Counterclaim-Defendant Sturdy Gun Safe, Inc.

("Sturdy Gun Safe") alleging three claims: (1) federal trade dress infringement and unfair

competition; (2) common law trade dress infringement and unfair competition; and (3)

dilution under the Idaho Code.  See Compl. ("Rhino Metals' Compl.") at 13–16 (Dkt. 1[1]).

Sturdy Gun Safe filed a complaint against Rhino Metals seeking: (1) a declaratory

judgment of trade dress noninfringement and (2) a declaratory judgment of design patent

noninfringement.  See Compl. for Decl. J. ("Sturdy Gun Safe's Compl.") at 4–5, Case

No. 1:19-cv-00063 (D. Idaho) (Dkt. 2).

---

[1] Unless otherwise stated, docket citations relate to Case Number 1:18-cv-00474.

**OPINION AND ORDER - 2**

Sturdy Gun Safe's Motion for Summary Judgment was filed on March 23, 2020. Sturdy Gun Safe's MSJ (Dkt. 56). Sturdy Gun Safe requests that the Court enter summary judgment in its favor on federal and state law trade dress infringement and unfair competition, dilution, and design patent infringement claims. See Mem. Supp. Sturdy Gun Safe's Mot. Summ. J. at 3–4 ("Sturdy Gun Safe's MSJ Mem.") (Dkt. 56-1).

Rhino Metals' Cross-Motion for Summary Judgment was filed on April 13, 2020. Rhino Metals' Cross-MSJ. Rhino Metals requests that the Court enter summary judgment in its favor on all claims of federal and state law trade dress infringement and unfair competition, dilution, and design patent infringement. See Mem. P. & A. Supp. Rhino Metals' Cross-Mot. & Opp'n Sturdy Gun Safe's Mot. Summ. J. at 9–10 ("Rhino Metals Cross-Motion for Summary Judgment Memo" or "Rhino Metals' Cross-MSJ Mem.") (Dkts. 59-1, 60).

Both Sturdy Gun Safe and Rhino Metals have failed to establish that summary judgment is warranted on any of their claims or counterclaims, for the following reasons:

1. There are triable issues as to elements of federal and common law trade dress infringement and unfair competition, including whether Rhino Metals' trade dress is nonfunctional;

2. There are triable issues as to elements of dilution under the Idaho Code, including whether Rhino Metals' trade dress is registerable and distinctive; and

3. There are triable issues as to elements of design patent infringement, including the scope of Rhino Metals' design patents.

**OPINION AND ORDER - 3**

## BACKGROUND

Rhino Metals initiated this action in the District of Idaho on October 26, 2018. See Rhino Metals' Compl.  Sturdy Gun Safe filed a related action in the Eastern District of California on October 19, 2018, one week prior to Rhino Metals' filing in the District of Idaho.  See Sturdy Gun Safe's Compl.  The United States District Court for the Eastern District of California transferred Sturdy Gun Safe's action to the District of Idaho due to lack of personal jurisdiction over Rhino Metals.  See Sturdy Gun Safe, Inc. v. Rhino Metals, Inc., 2019 U.S. Dist. LEXIS 25316, at *22–23 (E.D. Cal. Feb. 15, 2019).  The two actions were consolidated on February 27, 2019.  See Order Consolidating Actions and Reassigning (Dkt. 24).

The Parties submitted separate statements of undisputed material facts.  See Statement Undisputed Material Facts Supp. Sturdy Gun Safe's Mot. Summ. J. ("Sturdy Gun Safe's SMF") (Dkt. 56-2); Rhino Metals' Resp. Sturdy Gun Safe's Statement Purported Undisputed Material Facts Supp. Summ. J. Mot. ("Rhino Metals' Resp. to Sturdy Gun Safe's SMF") (Dkt. 59-3); Rhino Metals' Statement Material Facts Supp. Rhino Metals' Cross-Mot. and Opp'n Sturdy Gun Safe's Mot. Summ. J. ("Rhino Metals' SMF") (Dkts. 59-2, 60-1); Sturdy Gun Safe's Resp. Rhino Metals' Statement Material Facts Supp. Rhino Metals' Cross-Mot. and Opp'n Sturdy Gun Safe's Mot. Summ. J. ("Sturdy Gun Safe's Resp. to Rhino Metals' SMF") (Dkt. 93-1).  Upon review of the Parties' statements of material facts and supporting exhibits, the Court finds the following undisputed material facts:

Rhino Metals is an Idaho corporation that designs, manufactures, and sells gun safes throughout the United States.  Rhino Metals' SMF ¶ 1 at 3; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 2.  This case concerns Rhino Metals' Ironworks line of products.  Sturdy Gun Safe's SMF ¶ 9 at 3; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 2.  The Ironworks line of products have an antique look and feel that includes metal plates, rivets, and distressed metal surfaces accentuating the natural grain of the steel ("Ironworks Design" or "trade dress").  Sturdy Gun Safe's SMF ¶ 9 at 3; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 2.  Rhino Metals began selling products with the Ironworks Design in 2013.  Rhino Metals' SMF ¶ 3 at 3–4; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 2.  The general appearance of Rhino Metals' safes with the Ironworks Design is undisputed.  Rhino Metals' SMF ¶ 5 at 4; Sturdy Gun Safe's SMF ¶ 10 at 3; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 2; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 2.

Sturdy Gun Safe is a California corporation that designs, manufactures, and sells gun safes throughout the United States.  Sturdy Gun Safe's SMF ¶ 7 at 3; Rhino Metals' SMF ¶ 7 at 5; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 2; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 3.  In 2017, Sturdy Gun Safe started offering safes with the following finishes: "Distressed Metal," "Antique Chest," "Antique Clear," and "Old Hollywood."  Rhino Metals' SMF ¶ 20 at 8, ¶ 26 at 10, ¶ 27 at 10; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 3–4.  Sturdy Gun Safe began offering safes with a "Mean Metal" finish in the period since this action began.  Rhino Metals' SMF ¶ 77 at 28; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 17.  The general appearance of Sturdy

Gun Safe's base safe and Sturdy Gun Safe's safes with Distressed Metal, Antique Chest, Antique Clear, Old Hollywood, and Mean Metal finishes is undisputed.  Rhino Metals' SMF ¶ 10 at 5–6, ¶¶ 32–36 at 12–15; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 3, 5–6.  The general appearance of safes with other upgrade packages offered by Sturdy Gun Safe is also undisputed.  Rhino Metals' SMF ¶¶ 38–41 at 15–18; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 6–7.

The function of a gun safe is to secure the contents of the safe and protect against burglaries.  Rhino Metals' SMF ¶ 50 at 20; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 8.

Rhino Metals sells safes with the Ironworks Design on Rhino Metals' website and online marketplaces, such as Amazon.com, at trade shows, through a network of resellers around North America, and in retail outlets throughout Idaho, including at least twenty-four brick-and-mortar dealers.  Rhino Metals' SMF ¶ 66 at 24, ¶ 91 at 31; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 13, 20.

Rhino Metals has described the features of safes with the Ironworks Design in print advertisements.  Sturdy Gun Safe's SMF ¶¶ 15–29 at 5–8; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3.  In one 2014 print advertisement, Rhino Metals stated that the "Steel Thickness" was as follows: "Body: 11 Gauge (.12") w/external corner reinforcements" and "Door: Approx. 3/8" thick door edge w/ full coverage 1/4" plate and external reinforcement ring."  Sturdy Gun Safe's SMF ¶ 15 at 5; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3.  In another 2014 print advertisement, Rhino Metals stated that the "Steel Thickness" was as follows: "Body: 10 Gauge (.135") w/ external corner

**OPINION AND ORDER - 6**

reinforcements" and "Door: Approx. 1 7/8" thick formed door edge w/ full coverage 1/4"

plate and external reinforcement ring."  Sturdy Gun Safe's SMF ¶ 16 at 5; Rhino Metals'

Resp. to Sturdy Gun Safe's SMF at 3.  Rhino Metals stated in its 2015 advertising that

safes with the Ironworks Design had "12 GA steel body, external door and corner

reinforcements" or "10 GA body with double thickness in corners" with "1/4" solid

plated steel door front with reinforcements."  Sturdy Gun Safe's SMF ¶ 19 at 6; Rhino

Metals' Resp. to Sturdy Gun Safe's SMF at 3.  Rhino Metals' advertising from 2015 to

2017 stated that safes with the Ironworks Design had a "[d]istressed natural finish with

tough clear coating."  Sturdy Gun Safe's SMF ¶¶ 20–24 at 6–7; Rhino Metals' Resp. to

Sturdy Gun Safe's SMF at 3.  Rhino Metals' 2015–2017 advertising also stated that the

Ironworks Design contained a "reinforcement," "reinforcement plates," or "external

reinforcements."  Sturdy Gun Safe's SMF ¶¶ 21–25 at 6–7; Rhino Metals' Resp. to

Sturdy Gun Safe's SMF at 3.  In print advertisements from 2015 to 2017, Rhino Metals

stated that "All Ironworks series come with additional steel reinforcement plates on the

corners and door perimeter, effectively doubling the thickness in these key areas."

Sturdy Gun Safe's SMF ¶ 17 at 5, ¶ 18 at 6, ¶ 22 at 6–7, ¶ 24 at 7; Rhino Metals' Resp. to

Sturdy Gun Safe's SMF at 3.  In 2018 print advertisements for safes with the Ironworks

Design, Rhino Metals stated "[s]teel reinforcement plates on the corners and door

perimeter, effectively double the thickness in these key areas."  Sturdy Gun Safe's SMF

¶ 26 at 7, ¶ 28 at 8; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3.  Rhino Metals'

2018 advertisements also referred to the following features: "External Reinforcement

Plates on Corners & Door Perimeter for Increased Strength," a "10 Gauge Steel Body

**OPINION AND ORDER - 7**

with External Corner Reinforcements for Increased Strength," and "External

Reinforcement Plates on Corners & Door Perimeter for Added Pry Protection."  Sturdy

Gun Safe's SMF ¶¶ 27–29 at 7–8; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3.

Rhino Metals also described the features of safes with the Ironworks Design in

video advertisements.  Sturdy Gun Safe's SMF ¶ 30 at 8; Rhino Metals' Resp. to Sturdy

Gun Safe's SMF at 3–4.  An employee of Rhino Metals stated in one advertising video

that safes with the Ironworks Design "ha[ve] our patented rivets, and all these key pry

points are actually welded in place with these protection plates."  Sturdy Gun Safe's SMF

¶ 31 at 8; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 4.  In other videos, Rhino

Metals' founder, Don Suggs, stated that safes with the Ironworks Design have "extra

reinforcement gussets added on the corners and door edges for superior strength and

increased fire protection" and "external reinforcement plates welded on the corners and

door edges, doubling the thickness, strength, and rigidity in these key areas."  Sturdy Gun

Safe's SMF ¶ 30 at 8, ¶ 37 at 9, ¶ 38 at 10; Rhino Metals' Resp. to Sturdy Gun Safe's

SMF at 3–4, 5.

Rhino Metals has advertised or made statements regarding features of the

Ironworks Design nationwide on television, social media, Rhino Metals' website, and

online marketplaces and in Rhino Metals' product catalogs.  Sturdy Gun Safe's SMF ¶ 32

at 8–9, ¶ 33 at 9, ¶¶ 41–44 at 10–11; Rhino Metals' SMF ¶ 74 at 27; Rhino Metals' Resp.

to Sturdy Gun Safe's SMF at 4, 6; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 16.

Rhino Metals has advertised on the "Rush Limbaugh Show," a radio show that was aired

by radio stations throughout Idaho.  Rhino Metals' SMF ¶ 93 at 31; Sturdy Gun Safe's

**OPINION AND ORDER - 8**

Resp. to Rhino Metals' SMF at 20.  In 2013, Rhino Metals stated on Facebook that the Ironworks Design featured "external reinforcement plates and forged rivets on the corners and door, the safes are reminiscent of days long gone, yet feature the company's newest and most advanced locking system."  Sturdy Gun Safe's SMF ¶ 32 at 8–9; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 4.  Rhino Metals stated on Facebook in 2017 that "[e]very rivet serves a distinct purpose.  To fortify and define your home. . . ." Sturdy Gun Safe's SMF ¶ 33 at 9; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 4. Rhino Metals posted a picture of a safe with the Ironworks Design being used as a bedside table on Instagram in 2017.  Rhino Metals' SMF ¶ 24 at 9; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 4.  Rhino Metals' website lists "Heavy Duty 10 gauge formed steel body with external corner reinforcements on critical attack points" under the "Security Features" of safes with the Ironworks Design.  Sturdy Gun Safe's SMF ¶ 41 at 10; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 6.  Rhino Metals' 2019 product catalog states that certain safes with the Ironworks Design feature "10 Gauge Steel Body with External Corner Plates" and a "Unique Antiqued Finish."  Sturdy Gun Safe's SMF ¶ 42 at 10, ¶ 43 at 11; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 6.

Sturdy Gun Safe advertises its products nationwide on its website, Amazon.com, Google.com, and social media.  Rhino Metals' SMF ¶ 73 at 27; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 16.  Sturdy Gun Safe has sold its products at issue in this action to consumers throughout the United States.  Rhino Metals' SMF ¶ 73 at 27; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 16.  Sturdy Gun Safe maintains a website, social media, and other internet sites to attract customers.  Rhino Metals' SMF ¶ 19 at 7; Sturdy

**OPINION AND ORDER - 9**

Gun Safe's Resp. to Rhino Metals' SMF at 3.  In July 2017, Sturdy Gun Safe posted on

Facebook an announcement that it would sell safes with a "distressed look" and a "weld

rivet design."  Rhino Metals' SMF ¶ 20 at 8; Sturdy Gun Safe's Resp. to Rhino Metals'

SMF at 3.  Sturdy Gun Safe posted a picture of a safe being used as a bedside table on

Instagram in 2017.  Rhino Metals' SMF ¶ 25 at 10; Sturdy Gun Safe's Resp. to Rhino

Metals' SMF at 4.  Sturdy Gun Safe posted a blog entry on its website in 2018 that

compared Sturdy Gun Safe's products with Rhino Metals' products featuring the

Ironworks Design and that contained words such as "antique," "distressed," "heavy

duty," and "rivets."  Rhino Metals' SMF ¶ 47 at 19; Sturdy Gun Safe's Resp. to Rhino

Metals' SMF at 8.

     In July 2017, a user on Instagram stated that Sturdy Gun Safe's post "[l]ooks a lot

like [R]hino [M]etals safes."  Rhino Metals' SMF ¶ 23 at 9; Sturdy Gun Safe's Resp. to

Rhino Metals' SMF at 4.  Sturdy Gun Safe responded that:

> Even though there are notable differences, I do see similarities to the Rhino
> and Fort Knox distressed finished safes.  Like the car industry, or cell phone
> industry, you need to keep reinventing the wheel on options.  Even with these
> upgrades, no one will come close to the steel thickness for the price.

Rhino Metals' SMF ¶ 23 at 9; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 4.

Sturdy Gun Safe posted a similar response on Facebook to a customer who had posted

"Why copy a [R]hino safe?  Your safes are way better than what they offer.  At least the

one I bought from you is," responding "We are only talking cosmetic changes."  Rhino

Metals' SMF ¶ 22 at 8–9; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 3–4.

**OPINION AND ORDER - 10**

Sturdy Gun Safe regularly monitors competitors and their product offerings and views Rhino Metals, and the Ironworks Design, as a competitor.  Rhino Metals' SMF ¶ 14 at 6, ¶ 70 at 25–26; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 3, 15.  Sturdy Gun Safe became aware of Rhino Metals' safes with the Ironworks Design between 2014 and 2015.  Rhino Metals' SMF ¶ 15 at 6–7; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 3.  Sturdy Gun Safe was "well aware" of Rhino Metals' Ironworks Design by 2017 and referred to it as "aesthetically attractive" and "one of its 'favorite' designs available in the gun safe market."  Rhino Metals' SMF ¶ 16 at 7, ¶ 17 at 7; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 3.

Rhino Metals has three patents that are at issue in this action: U.S. Design Patent Nos. D728,189 ("D189 Patent"), dated April 28, 2015; D744,715 ("D715 Patent"), dated December 1, 2015; and D774,272 ("D272 Patent"), dated December 13, 2016 (collectively, "Rhino Metals' Design Patents").  Sturdy Gun Safe's SMF ¶¶ 45–47 at 11; Rhino Metals' SMF ¶ 78 at 28; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 6; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 17.  Rhino Metals sent Sturdy Gun Safe a cease and desist letter on September 11, 2018, that listed the D189 Patent as part of Rhino Metals' intellectual property portfolio related to the Ironworks Design.  Rhino Metals' SMF ¶ 87 at 30; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 20.  In its Answer and Counterclaims to Sturdy Gun Safe's Complaint ("Rhino Metals' Answer & Counterclaims") (Dkt. 27), Rhino Metals did not assert that Sturdy Gun Safe's products infringed the D189 Patent.  Rhino Metals' SMF ¶ 89 at 30; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 20; Rhino Metals' Answer & Counterclaims at 16–20.

**OPINION AND ORDER - 11**

## JURISDICTION

The Court has jurisdiction over Rhino Metals' federal trade dress infringement and unfair competition claims and Sturdy Gun Safe's declaratory relief actions pursuant to Lanham Act § 39, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332, and 1338.  The Court has supplemental jurisdiction over Rhino Metals' related common law and state law claims under 28 U.S.C. § 1367(a).

## LEGAL STANDARD

Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  See id.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party satisfies the initial burden, the opposing party must produce specific facts showing a genuine issue of material fact for trial.  See FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact.  See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 738 (9th Cir. 1979).  A genuine issue of material fact must be more than "a scintilla of evidence or evidence that is merely colorable or not significantly probative."  Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000); see also Stefanchik, 559 F.3d at 929 ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." (citation omitted)).  When determining if a party is entitled to summary judgment, the Court must view the evidence in the light most favorable to the opposing party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).

<strong>DISCUSSION</strong>

**I.     Cross-Motions for Summary Judgment on Federal Trade Dress and Unfair Competition Claim**

Rhino Metals filed a motion for summary judgment arguing that Sturdy Gun Safe infringed Rhino Metals' trade dress rights under Lanham Act § 43(a), 15 U.S.C. § 1125(a).  Rhino Metals' Cross-MSJ Mem. at 14–36.  Sturdy Gun Safe filed a cross-motion for summary judgment arguing that it did not infringe Rhino Metals' trade dress rights.  Sturdy Gun Safe's MSJ Mem. at 5–16.

The Lanham Act prohibits the use in commerce of:

> any word, term, name, symbol, or device, or any combination thereof . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

Lanham Act § 43(a)(1), 15 U.S.C. § 1125(a)(1).  "It is well established that trade dress can be protected under federal law.  The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source." TrafFix Devices, Inc. v. Mktg. Displays, Inc. ("TrafFix"), 532 U.S. 23, 28 (2001).  The

primary purpose of trademark law is to ensure that customers are able to identify the source of goods.  Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062, 1067 (9th Cir. 2006) (citing Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 164 (1995)).

To succeed on its trade dress infringement claims, Rhino Metals must prove three elements: (1) nonfunctionality; (2) distinctiveness or secondary meaning; and (3) likelihood of consumer confusion.  Millennium Labs., Inc. v. Ameritox, 817 F.3d 1123, 1126 n.1 (9th Cir. 2016) (quoting Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258 (9th Cir. 2001)); see also Two Pesos, Inc. v. Taco Cabana, Inc. ("Two Pesos"), 505 U.S. 763, 769–71 (1992).  Sturdy Gun Safe has established triable issues as to each of these three elements, precluding summary judgment for Rhino Metals. Similarly, Rhino Metals has also established triable issues as to each of these three elements, precluding summary judgment for Sturdy Gun Safe.

## A.    Nonfunctionality

It is undisputed that Rhino Metals' Ironworks Design trade dress consists of an antique look and feel that includes metal plates, rivets, and distressed metal surfaces accentuating the natural grain of the steel.  Sturdy Gun Safe's SMF ¶ 9 at 3; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 2.  Rhino Metals has the burden of proving that its trade dress is nonfunctional in order to be eligible for trade dress protection. Lanham Act § 43(a)(3), 15 U.S.C. § 1125(a)(3).  Functionality is a question of fact. Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 843 (9th Cir. 1987).  Two types of functionality exist: a "traditional rule" of utilitarian functionality and a second

rule addressing "aesthetic functionality." TrafFix, 532 U.S. at 32–33.  The Court first

inquires whether the alleged trade dress meets the traditional test for functionality—

whether the trade dress is essential to the use or purpose of the article or affects its cost or

quality.  Au-Tomotive Gold, 457 F.3d at 1072.  If the answer is affirmative, the feature is

functional and not protected.  Id.  If the trade dress is determined to be functional in step

one, the Court need not proceed to step two to assess aesthetic functionality.  See id.;

TrafFix, 532 U.S. at 33.  When assessing whether trade dress is functional, the Court

considers not whether the individual elements are functional but whether the whole

collection of elements taken together is functional.  Fuddruckers, 826 F.2d at 842–43; see

also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 823 (9th Cir. 1993).  The

Court assesses whether the features of the trade dress overall, including the "arrangement

and combination" of its features, are functional.  Blumenthal Distrib., Inc. v. Herman

Miller, Inc. ("Blumenthal"), 963 F.3d 859, 866 (9th Cir. 2020).

### 1.    Utilitarian Functionality

The utilitarian functionality test asks whether the alleged trade dress is "essential

to the product's use or if it affects the cost or quality of the article."  Fuddruckers, 826

F.2d at 842; see also TrafFix, 532 U.S. at 32–33.  A product's overall appearance is

functional as a matter of law when "the whole product is 'nothing other than the

assemblage of functional parts,' and 'even the arrangement and combination' of those

parts is designed to make the product more functional."  Blumenthal, 963 F.3d at 866

(quoting Leatherman Tool Grp., Inc. v. Cooper Indus., Inc., 199 F.3d 1009, 1013 (9th

Cir. 1999)).  To determine whether a feature is functional, the Ninth Circuit assesses four

**OPINION AND ORDER - 15**

factors: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." Disc Golf Ass'n v. Champion Discs, Inc. ("Disc Golf"), 158 F.3d 1002, 1006 (9th Cir. 1998). These factors are not individually dispositive and are all given equal weight. Id. (citing Int'l Jensen, 4 F.3d at 823).

### a.   Utilitarian Advantage

The first functionality factor is whether a design yields a utilitarian advantage. Disc Golf, 158 F.3d at 1006. "[T]rade dress features have 'utilitarian advantage' when they affect the 'cost or quality' of the product or the features are 'the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that the particular entity made, sponsored, or endorsed a product.'" Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC, 741 F. Supp. 2d 1165, 1173 (C.D. Cal. 2010) (citing Leatherman Tool Grp., 199 F.3d at 1011–12). "If a seller advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of functionality." Disc Golf, 158 F.3d at 1009. The design "need only have *some* utilitarian advantage to be considered functional" and does not need to provide "*superior* utilitarian advantages." Id. at 1007 (emphasis in original). Rhino Metals asserts that its Ironworks Design trade dress is decorative in nature and not utilitarian. Rhino Metals' Cross-MSJ Mem. at 17–20; see also Rhino Metals' Reply Br. Supp. Cross-Mot. Summ. J. ("Rhino Metals' MSJ Reply Brief") at 13–15 (Dkt. 97). Rhino Metals asserts that the Ironworks Design trade dress as a whole is not essential to the use or purpose of the product because it does not make

safes stronger or more secure.  Rhino Metals' Cross-MSJ Mem. at 17–20.  Rhino Metals

also asserts that the metal plating, rivets, and exterior finish, viewed individually, offer no

utilitarian advantage.  See Rhino Metals' SMF ¶¶ 55–57 at 21–22 (citing Decl. of Don

Suggs Supp. Rhino Metals' Cross-MSJ ("Suggs Declaration" or "Suggs Decl.") ¶¶ 23–26

at 14–17 (Dkts. 59-5; 60-2); Decl. Kyle Walters Supp. Rhino Metals' Cross-MSJ

("Walters Declaration" or "Walters Decl.") ¶¶ 24–27 at 13–14 (Dkts. 59-65; 60-14);

Decl. Benjamin N. Simler Supp. Rhino Metals' Cross-MSJ ("Simler Declaration" or

"Simler Decl.") Ex. 16 at 76–77 (Dkt. 59-22); Simler Decl. Ex. 17 at 20–22, 32 (Dkt. 59-

23)).

Evidence submitted by the Parties in support of their summary judgment motions

supports a finding that two of the claimed trade dress features of the Ironworks Design,

the metal plates and rivets, are essential to the use or purpose of the safes and affect the

quality of the safes.  For example, undisputed evidence suggests that the metal plates

have functionality, including: (1) a 2014 print advertisement that describes the "Steel

Thickness" as having external corner reinforcements and a thick door edge with 1/4"

plate and external reinforcement ring, Sturdy Gun Safe's SMF ¶ 15 at 5; Rhino Metals'

Resp. to Sturdy Gun Safe's SMF at 3; see also McQuade Decl. Supp. Sturdy Gun Safe's

Mot. Summ. J. ("McQuade Decl.") at 25 (Dkt. 56-3); (2) a 2014 print advertisement that

states that the "Steel Thickness" has external corner reinforcements and the door has a 1

7/8" thick formed edge with full coverage of a 1/4" plate and external reinforcement ring,

Sturdy Gun Safe's SMF ¶ 16 at 5; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3;

see also McQuade Decl. at 26; (3) a 2015 Rhino Metals advertisement asserts that safes

**OPINION AND ORDER - 17**

with the Ironworks Design had "12 GA steel body, external door and corner reinforcements" or "10 GA body with double thickness in corners" with "1/4" solid plated steel door front with reinforcements," Sturdy Gun Safe's SMF ¶ 19 at 6; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3; see also McQuade Decl. at 29, 30, 33, 34; (4) Rhino Metals' 2015–2017 advertising states that the Ironworks Design contains a "reinforcement," "reinforcement plates," or "external reinforcements," Sturdy Gun Safe's SMF ¶¶ 21–25 at 6–7; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3; see also McQuade Decl. at 31, 35, 38, 40, 42, 43, 44, 45; (5) Rhino Metals' print advertisements from 2015 to 2017 state that "All Ironworks series come with additional steel reinforcement plates on the corners and door perimeter, effectively doubling the thickness in these key areas," Sturdy Gun Safe's SMF ¶ 17 at 5, ¶ 18 at 6, ¶ 22 at 6–7, ¶ 24 at 7; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3; see also McQuade Decl. at 28–31, 38, 42–44; (6) 2018 print advertisements for safes with the Ironworks Design state that "[s]teel reinforcement plates on the corners and door perimeter, effectively double the thickness in these key areas," Sturdy Gun Safe's SMF ¶ 26 at 7, ¶ 28 at 8; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3; see also McQuade Decl. at 47–48; (7) Rhino Metals' 2018 advertisements refer to "External Reinforcement Plates on Corners & Door Perimeter for Increased Strength," a "10 Gauge Steel Body with External Corner Reinforcements for Increased Strength," and "External Reinforcement Plates on Corners & Door Perimeter for Added Pry Protection," Sturdy Gun Safe's SMF ¶¶ 27–29 at 7–8; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3; see also McQuade Decl. at 47–48; and (8) a Rhino Metals video states that safes with the Ironworks Design have "extra

**OPINION AND ORDER - 18**

reinforcement gussets added on the corners and door edges for superior strength and increased fire protection" and "external reinforcement plates welded on the corners and door edges, doubling the thickness, strength, and rigidity in these key areas," Sturdy Gun Safe's SMF ¶ 30 at 8, ¶ 37 at 9, ¶ 38 at 10; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3–5; see also McQuade Decl. at 49, 60–61.

Similarly, undisputed evidence suggests that the rivets feature of the Ironworks Design has functionality, including: (1) a Rhino Metals advertising video commenting that safes with the Ironworks Design "ha[ve] our patented rivets, and all these key pry points are actually welded in place with these protection plates," Sturdy Gun Safe's SMF ¶ 31 at 8; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 4; McQuade Decl. at 50; (2) a 2013 Rhino Metals Facebook page stated that the Ironworks Design featured "external reinforcement plates and forged rivets on the corners and door, the safes are reminiscent of days long gone, yet feature the company's newest and most advanced locking system," Sturdy Gun Safe's SMF ¶ 32 at 8–9; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 4; McQuade Decl. at 51–53; and (3) a Facebook post by Rhino Metals in 2017 stating that "Every rivet serves a distinct purpose.  To fortify and define your home. . . ," Sturdy Gun Safe's SMF ¶ 33 at 9; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 4; McQuade Decl. at 54–56.  The undisputed evidence suggests that the rivets serve an integral purpose to fortify the pry points on the safe and provide protection when welded together with the metal plates.

The functionality of the third trade dress feature, the distressed metal surfaces, is less clear.  The Parties dispute the functionality of the distressed metal surfaces, and a

review of the evidence leads the Court to conclude that summary judgment is not appropriate as a matter of law as to the distressed metal surfaces feature. The Parties do not dispute that Rhino Metals' advertisements from 2015 to 2017 state that safes with the Ironworks Design had a "[d]istressed natural finish with tough clear coating." Sturdy Gun Safe's SMF ¶¶ 20–24 at 6–7; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 3; see also McQuade Decl. at 29–31, 33–35, 38, 40, 43–44. No other evidence proffered by the Parties addresses the functionality of the distressed metal surfaces, and the Court concludes that the undisputed facts do not conclusively support a finding regarding utilitarian advantages of the distressed metal finish.

Viewing the functionality of the three Ironworks Design trade dress features of the metal plating, rivets, and distressed metal as a whole, the Court concludes that undisputed evidence in the record, when viewed in the light most favorable to the nonmoving Party, does not support a finding of utilitarian advantage of the trade dress features in favor of either Party. Summary judgment is not warranted and the issue of functionality of the trade dress overall must be resolved at trial.

### b.    Availability of Alternative Designs

The second functionality factor is whether alternative designs are available. Disc Golf, 158 F.3d at 1006, 1008–09. If functionality has been established already, the Court need not "engage . . . in speculation about other design possibilities." TrafFix, 532 U.S. at 33–34. "[T]he existence of alternative designs may indicate whether the trademark itself embodies functional or merely ornamental aspects of the product." Talking Rain Beverage Co. v. S. Beach Beverage Co., 349 F.3d 601, 603 (9th Cir. 2003) (citing

**OPINION AND ORDER - 20**

TrafFix, 532 U.S. at 34).  The Court of Appeals for the Ninth Circuit has held that "the

existence or nonexistence of alternative designs [is] probative evidence of functionality

or nonfunctionality."  Moldex-Metric, Inc. v. McKeon Prod., Inc., 891 F.3d 878, 886 (9th

Cir. 2018).  The alternative designs must offer *exactly* the same features as the trade dress

design.  See Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 786 (9th Cir. 2002) (citing

Leatherman Tool Grp., 199 F.3d at 1013–14).  The Court of Appeals has also held that

"evidence of alternative colors should be considered in deciding functionality of the

mark."  Moldex-Metric, Inc., 891 F.3d at 886.

It is undisputed that alternative designs and colors are available.  Rhino Metals'

SMF ¶ 53 at 21, ¶ 55 at 21; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 9.  The

Parties dispute, however, whether the alternative designs offer the same features as the

asserted trade dress.  Rhino Metals' SMF ¶ 52 at 20–21, ¶ 54 at 21, ¶ 55 at 21; Sturdy

Gun Safe's Resp. to Rhino Metals' SMF at 8–9.  The Court observes that the Report of

Joel Delman, cited by both Parties, states that alternative designs would not offer the

same features because plug welds are the most secure way to attach metal plates and

internal plates do not deter would-be burglars.  See McQuade Decl. Supp. Sturdy Gun

Safe's Opp'n Rhino Metals' Cross-MSJ Ex. 5 ("Delman Report") ¶¶ 139–42 at 143–44

(Dkt. 93-2).  The Delman Report indicates, however, that it is not essential for the plug

welds to look like rivets.  Id.

The Court concludes that because the evidence of alternative designs offering the

same features as the trade dress is disputed, summary judgment is not appropriate and a

**OPINION AND ORDER - 21**

genuine, triable dispute of fact exists with respect to the second functionality factor of alternate designs.

### c.    Advertising Touting Utilitarian Advantages

The third functionality factor is whether advertising touts the utilitarian advantages of the design to support a finding that the design is functional.  Disc Golf, 158 F.3d at 1006, 1009.  "If a seller advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of functionality."  Id. at 1009.  Even a mere inference of utilitarian advantages in advertising weighs in favor of a finding of functionality.  See id. at 1009.

The Court noted examples above of undisputed evidence showing advertising touting the utilitarian advantages of the metal plates and rivets features of the Ironworks Design.  No evidence of advertising was submitted regarding the utilitarian advantages of the third distressed metal surfaces feature, nor discussing the Ironworks Design as a whole.  The Court concludes that advertising touting utilitarian advantages, when viewed in the light most favorable to either nonmoving Party, does not support the granting of summary judgment.

### d.    Comparatively Simple or Inexpensive Method of Manufacture

The fourth functionality factor is whether the particular design results from a comparatively simple or inexpensive method of manufacture.  Disc Golf, 158 F.3d at 1006, 1009.  A design may be functional if it "achieves economies in manufacture or use."  Id. at 1009.  Rhino Metals contends that the Ironworks Design trade dress does not

result from a simpler or less costly manufacturing process.  See Rhino Metals' Cross-MSJ Mem. at 23 (citing Suggs Decl. ¶ 27 at 17; Walters Decl. ¶¶ 36–40 at 19–21).

Sturdy Gun Safe disputes Rhino Metals' assertion that the cost of manufacturing safes with the asserted trade dress is not materially different from the cost of manufacturing Rhino Metals' other safes.  Sturdy Gun Safe's MSJ Mem. at 9–10; Rhino Metals' SMF ¶ 59 at 22–23; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 9, 10–11.

Evidence submitted by the Parties does not indicate conclusively whether the particular design results from a comparatively simple or inexpensive method of manufacture.  In his deposition, Suggs stated that the overall cost of manufacturing safes with the Ironworks Design is not materially different from the cost of manufacturing Rhino Metals' other safes.  Decl. of Counsel Supp. Sturdy Gun Safe's Opp'n Rhino Metals' Cross-MSJ Ex. 1 ("Suggs Deposition" and "Suggs Dep.") at 18 (Dkt. 93-2); see also Suggs Decl. ¶ 27 at 17.  In contrast, the Delman Report states that the Ironworks Design is a comparatively less costly method of manufacture because external metal plating is attached with an inexpensive and simple method, that removing the rivet feature would increase the cost to manufacture the safes, and the natural metal finish is cheaper than a painted finish.  See Delman Report ¶¶ 144–53 at 144–45.  In light of this contrary evidence, the Court concludes that a triable dispute exists with respect to the fourth functionality factor of whether the asserted trade dress results from a comparatively simple or inexpensive method of manufacturing.

### e.  Other Considerations in Determining Functionality

In addition to the factors outlined in <u>Disc Golf</u> discussed above, the Court may also consider other existing intellectual property protections in determining whether a design is functional.  For example, the existence of a utility patent "has vital significance in resolving a trade dress claim, for a utility patent is strong evidence that the features therein claimed are functional."  <u>TrafFix</u>, 532 U.S. at 23.  Conversely, the existence of design patents, which are issued for aesthetic and ornamental features, can support a conclusion of nonfunctionality.  <u>See</u> <u>In re R.M. Smith, Inc.</u>, 734 F.2d 1482, 1485 (Fed. Cir. 1984) ("The existence of a design patent may be some evidence of non-functionality.").

It is undisputed that Rhino Metals has three design patents.  Sturdy Gun Safe's SMF ¶¶ 45–47 at 11; Rhino Metals' SMF ¶ 78 at 28; Rhino Metals' Resp. to Sturdy Gun Safe's SMF at 6; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 17.  The Parties dispute whether Rhino Metals' patents cover the features of the Ironworks Design, particularly the distressed metal finish.  <u>See</u> <u>infra</u> Part IV.B. (discussing the disputed scope of the design patents).  Because the Court determined that genuine issues of material fact exist regarding functionality of the Ironworks Design, and it is disputed whether Rhino Metals' design patents cover all features of the trade dress as a whole, the Court concludes that the existence of Rhino Metals' design patents alone is insufficient to overcome the previous factors discussed.

When viewed in the light most favorable to each nonmoving Party, the Court concludes that genuine issues of material fact exist regarding the utilitarian functionality of the Ironworks Design trade dress as a whole.

### 2.   Aesthetic Functionality

Step two of the functionality test involves inquiring into "aesthetic functionality" by determining "whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." Millennium Labs., 817 F.3d at 1129 (quoting Au-Tomotive Gold, 457 F.3d at 1072). A product's overall appearance is aesthetically functional if "protecting the trade dress threatens to eliminate a substantial swath of competitive alternatives in the relevant market." Clicks Billiards, 251 F.3d at 1261 n.5 (quoting Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1119 n.6 (5th Cir. 1991)). Aesthetic functionality is limited to "product features that serve an aesthetic purpose wholly independent of any source-identifying function." Au-Tomotive Gold, 457 F.3d at 1073 (citing Qualitex, 514 U.S. at 166). The "ultimate test" of aesthetic functionality is "whether the recognition of trademark rights would significantly hinder competition." Qualitex, 514 U.S. at 170 (citation omitted). If the trade dress is determined to have utilitarian functionality, the Court need not proceed to assess aesthetic functionality. See Au-Tomotive Gold, 457 F.3d at 1072.

Rhino Metals contends that protection of the asserted trade dress would not impose a significant non-reputation-related competitive disadvantage. Rhino Metals' Cross-MSJ Mem. at 23–24. Sturdy Gun Safe asserts to the contrary that trade dress protection will place it at a competitive disadvantage, will harm Sturdy Gun Safe's

continued success, and will prevent Sturdy Gun Safe from expanding its business and selling popular, high-profit margin safes.  Combined Mem. Opp'n Rhino Metals' Cross-Mot. Summ. J. & Reply Supp. Sturdy Gun Safe's Mot. Summ. J. at 20–21 ("Sturdy Gun Safe's Reply") (Dkt. 93).

Neither Party has established undisputed facts that support a finding of aesthetic functionality.  The Parties dispute the extent to which Rhino Metals' sales relate to the Ironworks Design trade dress and its competitive impact.  Because genuine issues of material fact exist as to whether protection of the Ironworks Design trade dress would significantly hinder competition, the Court concludes that summary judgment on the issue of aesthetic functionality is not appropriate.

### B.    Distinctiveness and Likelihood of Confusion

In addition to functionality, distinctiveness and likelihood of confusion are required elements to prove trade dress infringement.  See Millennium Labs., 817 F.3d at 1126 n.1 (quoting Clicks Billiards, 251 F.3d at 1258).  Distinctiveness measures the significance of the mark to the purchasing public.  See Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010).  Likelihood of confusion exists when "customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark."  Fuddruckers, 826 F.2d at 845.

Because the Court concludes that summary judgment is not appropriate for either Party on the issue of functionality, and only nonfunctional trade dress is eligible for

**OPINION AND ORDER - 26**

protection, the Court need not assess whether the Ironworks Design is distinctive or whether Sturdy Gun Safe's designs create a likelihood of confusion.

## II.     Cross-Motions for Summary Judgment on Common Law Trade Dress Infringement and Unfair Competition Claim

Sturdy Gun Safe moves for summary judgment contending that it did not violate common law trade dress infringement and unfair competition laws.  See Sturdy Gun Safe's MSJ Mem. at 20–21.  Rhino Metals cross-moves for summary judgment, arguing that Sturdy Gun Safe violated common law trade dress infringement and unfair competition laws.  See Rhino Metals' Cross-MSJ Mem. at 14–15.

Idaho common law recognizes the tort of unfair competition.  See Woodland Furniture, LLC v. Larsen, 124 P.3d 1016, 1023 (Idaho 2005).  Though state unfair competition laws are viable, they have been largely curtailed by federal intellectual property laws.  Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 154 (1989).  The common law tort of unfair competition is "limited to protection against copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source."  Id. at 158.  Under Idaho common law, this includes the "unnecessary imitation or adoption of a confusing name, label, or dress of goods."  Am. Home Benefit Ass'n v. United Am. Benefit Ass'n, 125 P.2d 1010, 1014 (Idaho 1942) (quoting Starr v. Hotelling, 122 P.2d 432, 434 (Or. 1942)).

Unfair competition is a question of fact.  See Cazier v. Econ. Cash Stores, 228 P.2d 436, 443 (Idaho 1951).  "Where there is no reason for using a particular [dress] other than to trade upon another's good will, such use of the [dress] constitutes unfair

**OPINION AND ORDER - 27**

competition and will be enjoined." <u>Sky Capital Grp., LLC v. Rojas</u>, 2009 U.S. Dist. LEXIS 40970, at *21 (D. Idaho May 14, 2009) (quoting <u>Am. Home Benefit Ass'n</u>, 125 P.2d at 1014).  It is not necessary for the plaintiff to show, however, that a person "has been actually deceived by defendant['s] conduct." <u>Cazier</u>, 228 P.2d at 442.  The plaintiff must simply show "that such deception will be the natural and probable result of defendant's acts." <u>Id.</u>

As the Court discussed in detail above, genuine issues of material fact exist regarding the functionality of Rhino Metals' trade dress as a whole.  <u>See</u> <u>supra</u> Part I.A. Because nonfunctionality is necessary for claims of common law trade dress infringement and unfair competition to succeed, summary judgment must be denied.

## III.   Cross-Motions for Summary Judgment on Dilution Under Idaho Law Claim

Rhino Metals moves for summary judgment contending that Sturdy Gun Safe's actions caused dilution of Rhino Metals' trade dress under Idaho Code § 48-513.  Rhino Metals' Cross-MSJ Mem. at 41–43.  Sturdy Gun Safe moves for summary judgment, asserting that it did not cause dilution of Rhino Metals' trade dress.  Sturdy Gun Safe's MSJ Mem. at 18–20.  Section 48-513 of the Idaho Code entitles the owner of a famous mark to relief if another party's use of a mark causes dilution of the distinctive quality of the owner's mark.  Idaho Code Ann. § 48-513.

### A.   Trade Dress

Sturdy Gun Safe argues that trade dress is not covered under the Idaho Code because trade dress is not explicitly referenced.  <u>See</u> Sturdy Gun Safe's MSJ at 19–20.

Sturdy Gun Safe argues, therefore, that Rhino Metals' trade dress is not protected under Idaho Code § 48-513.  Id.

The Idaho Code defines a mark as "any trademark, service mark, collective mark or certification mark entitled to registration under this act whether registered or not." Idaho Code Ann. § 48-501(7).  A trademark is defined as "any word, name, symbol, or device or any combination thereof used by a person to identify and distinguish the goods of such person, including a unique product, from those manufactured and sold by others." Id. § 48-501(11).

The Parties do not cite any state or federal case law discussing whether trade dress is covered under the definition of trademark in the Idaho Code.  Apparently, this is an issue of first impression under Idaho law.  The Idaho Code provides some guidance that this Court can consider when interpreting the state statute.  The Idaho Code states that:

> [t]he intent of this act is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the [Lanham Act].  To that end, the construction given the federal act should be examined as persuasive authority for interpreting and construing this act.

Id. § 48-518.  In consideration of this statutory guidance, the Court cites as persuasive authority federal court decisions construing the Lanham Act in analyzing the Idaho Code trade dress claim.

The Supreme Court has stated that Section 43(a) of the Lanham Act "provides no basis for distinguishing between trademark and trade dress."  Two Pesos, 505 U.S. at 773.  Trade dress constitutes a "symbol" or "device" for purposes of marks registerable

and actionable under Lanham Act §§ 2 and 43.  <u>Wal-Mart Stores v. Samara Bros. Inc.</u>,

529 U.S. 205, 209 (2000); <u>see</u> Lanham Act § 43(a)(3), 15 U.S.C. § 1125(a)(3).

    The definitions of trademark set forth in Lanham Act § 45 and Idaho Code

§ 48-501 are nearly identical.  <u>Compare</u> Lanham Act § 45, 15 U.S.C. § 1127 ("The term

'trademark' includes any word, name, symbol, or device, or any combination thereof (1)

used by a person, or (2) which a person has a bona fide intention to use in commerce and

applies to register on the principal register established by this chapter, to identify and

distinguish his or her goods, including a unique product, from those manufactured or sold

by others and to indicate the source of the goods, even if that source is unknown.") <u>with</u>

Idaho Code Ann. § 48-501(11) ("'Trademark' shall mean any word, name, symbol, or

device or any combination thereof used by a person to identify and distinguish the goods

of such person, including a unique product, from those manufactured and sold by others,

and to indicate the source of the goods, even if that source is unknown.").  The Idaho

Code protects a registerable "symbol" or "device" used to distinguish goods under the

definition of a trademark.  <u>See</u> Idaho Code § 48-501(11).  The Supreme Court has

recognized that trade dress constitutes a symbol or device under the Lanham Act.  <u>See</u>

<u>Wal-Mart Stores</u>, 529 U.S. at 209–10.  The stated purpose of the Idaho Code is to

"provide a system of state trademark registration and protection substantially consistent

with the federal system."  Idaho Code Ann. § 48-518.  The federal system does not

distinguish between trademark and trade dress.  <u>See</u> <u>Two Pesos</u>, 505 U.S. at 773.  In

order to be consistent with the federal system, the Court concludes that the Idaho Code

should be read similarly to make no distinction between trade dress and trademark.  The

Court concludes, therefore, that the Idaho Code's definition of trademark includes trade dress, in line with the Lanham Act.  The Court holds that trade dress is protected and constitutes a "symbol" or "device" under Idaho Code § 48-501(11).

### B.     Registerable

For a mark to be protected under the Idaho Code, the mark must be registerable. Idaho Code Ann. § 48-501(7).  The Parties dispute whether the Ironworks Design is distinctive and, thus, registerable under the Idaho Code.  See Sturdy Gun Safe's MSJ Mem. at 18–20; Rhino Metals' Cross-MSJ Mem. at 24–28.

A registerable mark must have "some element of distinctiveness, arbitrariness or uniqueness, which may be inherent to the mark or acquired through extended usage and establishment of a reputation."  Idaho Code Ann. § 48-502(1).  The Idaho Code does not define "distinctiveness."  See id. § 48-501.  As noted above, the Idaho Code intends to provide a system of state trademark registration and protection substantially consistent with the federal system under the Lanham Act.  Id. § 48-518.  Therefore, the Court looks to prior federal decisions regarding the construction of the Lanham Act for persuasive authority when determining if a trade dress is distinctive under the Idaho Code.

Distinctiveness measures "the primary significance of the mark to the purchasing public."  See Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 760–61 (9th Cir. 2006). Unregistered trade dress is distinctive and protectible under the Lanham Act only upon a showing of secondary meaning.  Wal-Mart Stores, 529 U.S. at 216.  Secondary meaning is a question of fact.  First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1383 (9th Cir. 1987).  Trade dress acquires secondary meaning when consumers associate the trade

**OPINION AND ORDER - 31**

dress design features with a particular producer.  Adidas Am., Inc. v. Skechers USA, Inc., 890 F.3d 747, 754 (9th Cir. 2018).  Secondary meaning occurs when "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself."  Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982).  Secondary meaning can be established in a number of ways, including but not limited to: direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.  Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns., Inc., 198 F.3d 1143, 1151 (9th Cir. 1999).

Several relevant facts relating to distinctiveness and secondary meaning are undisputed.  For example, the Parties agree that two social media posts include comparisons by consumers of safes by Rhino Metals and Sturdy Gun Safe.  Rhino Metals' SMF ¶¶ 22–23 at 8–9; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 3–4.  It is undisputed that Rhino Metals began selling the Ironworks Design in 2013.  Rhino Metals' SMF ¶ 3 at 3–4; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 2.  The record establishes that other manufacturers offered similar-looking safes after 2013.  Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 12; Delman Report at 155 (identifying a contemporary safe featuring rivets, external reinforcements, and a distressed finish); Simler Decl. Ex. 23 (Dkt. 59-29) (blog post of July 7, 2018, comparing similar safe models from various manufacturers); Sturdy Gun Safe's Decl. of Counsel Supp. Opp'n Rhino Metals' Cross-MSJ Ex. 6 ("Pratt Deposition" and "Pratt Dep.") at 128 (Dkt. 93-3).

**OPINION AND ORDER - 32**

It is undisputed that Rhino Metals entered into an agreement with one of these manufacturers in 2018 regarding use of the Ironworks Design and similar safes.  Rhino Metals' SMF ¶ 6 at 5; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 2.

The Parties dispute, however, numerous material facts relating to distinctiveness and secondary meaning.  For example, Rhino Metals asserts that consumers associate the Ironworks Design with a single source, citing a consumer survey indicating that 87% of respondents associated the Ironworks Design trade dress with a single source and that 57.5% of respondents were able to name Rhino Metals or Ironworks as that source. Rhino Metals' SMF ¶ 68 at 25 (citing Simler Decl. Ex. 27 ("Wallace Report") at 4–8 (Dkt. 60-11)).  Sturdy Gun Safe argues to the contrary that the consumer survey does not show that consumers associate the Ironworks Design with a single source and indicates that the Ironworks Design trade dress acquired recognition with only 4.5% of respondents.  Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 14.

Rhino Metals contends that the Ironworks Design is distinctive and has acquired secondary meaning by referring to the following evidence: posts on social media indicating that the Ironworks Design is associated with Rhino Metals; consumer surveys showing that the Ironworks Design is associated with a single source; Rhino Metals exclusively selling the Ironworks Design or similar designs starting in 2013; Rhino Metals extensively advertising and selling the Ironworks Design; and Sturdy Gun Safe copying the Ironworks Design.  Rhino Metals' Cross-MSJ Mem. at 24–28.  Sturdy Gun Safe disputes Rhino Metals' contention that the Ironworks Design is distinctive and has secondary meaning, asserting to the contrary that: the declarations of four Rhino Metals

employees and dealers do not reflect consumer perception or establish exclusivity, manner, or length of use; the advertising and sales numbers provided by Rhino Metals include products not covered by the relevant trade dress; consumer surveys do not show that the Ironworks Design is associated with a single source; and Sturdy Gun Safe did not copy the Ironworks Design.  Sturdy Gun Safe's Reply at 21–24.

Because numerous genuine issues of material fact exist regarding whether the trade dress is distinctive and has acquired secondary meaning, summary judgment is precluded for either Party.

### C.    Famous Mark

Dilution under Idaho law requires that the subject mark be famous in Idaho and that the alleged improper use of the mark began after the mark became famous.  See Idaho Code Ann. § 48-513.  Rhino Metals contends that the Ironworks Design is famous in Idaho because it is distinctive and has obtained a secondary meaning to consumers. Rhino Metals' at 42.  Rhino Metals supports its contention by pointing to the duration and scope of its marketing and retail operations and the percentage of its sales in the state.  Id. at 42–43.  Sturdy Gun Safe argues that the Ironworks Design is not famous for the same reasons that it has not acquired a secondary meaning.  Sturdy Gun Safe's MSJ Mem. at 19–20; Sturdy Gun Safe's Reply at 28–29.  The Court concludes that there are genuine issues of material fact concerning whether the Ironworks Design is famous.

## IV.    Cross-Motions for Summary Judgment on Design Patent Infringement Claim

Sturdy Gun Safe asserts that it did not infringe Rhino Metals' three design patents that were referenced in a cease and desist letter sent to Sturdy Gun Safe: D728,189;

**OPINION AND ORDER - 34**

D744,715; and D774,272.  Sturdy Gun Safe's MSJ Mem. at 20–21; Sturdy Gun Safe's

Compl. at 8–26.  Rhino Metals' counterclaims assert design patent infringement only

over the D272 Patent and the D715 Patent.  Rhino Metals' Answer & Counterclaims at

19–20.  Rhino Metals challenges the Court's jurisdiction over the claim for declaratory

judgment of design patent noninfringement on the D189 patent.  See Rhino Metals'

Cross-MSJ Mem. at 40–41.  Prior to undertaking an analysis of Sturdy Gun Safe's

Motion and Rhino Metals' Cross-Motion, the Court first discusses jurisdiction over the

D189 Patent.

### A.    Jurisdiction Over the D189 Patent

Sturdy Gun Safe filed a claim seeking a declaratory judgment of noninfringement

of design patents, including the D189 Patent.  Sturdy Gun Safe's Compl. at 4–5.  Rhino

Metals counters that because it did not assert infringement of the D189 Patent, this Court

lacks jurisdiction to rule on Sturdy Gun Safe's declaratory judgment claim.  Rhino

Metals' Cross-MSJ Mem. at 40–41.

A party seeking declaratory judgment has the burden of establishing jurisdiction

by showing the existence of a case or controversy.  See MedImmune, Inc. v. Genentech,

Inc., 549 U.S. 118, 126–27 (2007).  The facts alleged must show that there is a substantial

controversy between parties having adverse legal interests of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment.  Id. at 127.  Threats of

litigation, both explicit and implicit, are sufficient to create justiciable controversies.  See

Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1157–58 (9th Cir. 2007) (noting that

"concrete threats" are not required to demonstrate a reasonable apprehension of litigation

under the Ninth Circuit's "flexible approach"); <u>SanDisk Corp. v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1381–82 (Fed. Cir. 2007); <u>see also</u> <u>Merit Healthcare Int'l, Inc. v. Merit Med. Sys.</u>, 721 F. App'x 628, 630 (9th Cir. 2018) (concluding that a request for additional information did not amount to "the explicit (or implicit) threats of litigation found to create justiciable controversies in other cases"); <u>3M Co. v. Avery Dennison Corp.</u>, 673 F.3d 1372, 1377 (Fed. Cir. 2012) ("[A] declaratory judgment plaintiff must allege an affirmative act by the patentee relating to the enforcement of his patent rights.").

Rhino Metals sent Sturdy Gun Safe a cease and desist letter on September 11, 2018. <u>See</u> Sturdy Gun Safe's Compl. at 8–24. It is undisputed that Rhino Metals' cease and desist letter asserted the D189 Patent as part of Rhino Metals' intellectual property related to the Ironworks Design. Rhino Metals' SMF ¶ 87 at 30; Sturdy Gun Safe's Resp. to Rhino Metals' SMF at 20. Rhino Metals' letter includes references to the Ironworks Design, three patents that allegedly cover the Ironworks Design (the D272 Patent, the D715 Patent, and the D189 Patent), Sturdy Gun Safe's allegedly infringing products, and a response deadline for Sturdy Gun Safe to avoid litigation. <u>See</u> Sturdy Gun Safe's Compl. at 8–13. Because the cease and desist letter asserted the D189 Patent and threatened patent litigation, the Court concludes that Rhino Metals' letter is a sufficient affirmative act by the patentee to support jurisdiction over the declaratory judgment claim.

### B.        Design Patent Noninfringement Claims

Design patent infringement occurs when a party, without a license from a design

patent owner, either (1) applies the patented design, or any colorable imitation, to any

article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article

of manufacture to which such design or colorable imitation has been applied.  35 U.S.C.

§§ 271, 289.  Design patent infringement requires that "in the eye of an ordinary

observer, giving such attention as a purchaser usually gives, two designs are substantially

the same, if the resemblance is such as to deceive such an observer, inducing him to

purchase one supposing it to be the other."  Gorham Mfg. Co. v. White, 81 U.S. 511, 528

(1871).  When analyzing patent infringement claims, courts conduct a two-step analysis.

Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).  The Court

must first determine the "meaning and scope of the patent claims asserted to be

infringed."  Id.  Second, the claimed patents are compared to the alleged infringing

device.  Id.  "Summary judgment on the issue of infringement is proper when no

reasonable jury could find that every limitation recited in a properly construed claim

either is or is not found in the accused device either literally or under the doctrine of

equivalents."  PC Connector Sols., LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed.

Cir. 2005).

Regarding the first step, the construction of the meaning and scope of a patent

claim is a question of law.  See Teva Pharms. USA, Inc. v. Sandoz, Inc., 574 U.S. 318,

325 (2015) (citing Markman, 517 U.S. at 388–91).  The scope of the claim covers "the

overall ornamentation of a design, not an aggregation of separable elements."  Sport

**OPINION AND ORDER - 37**

Dimension, Inc. v. Coleman Co., Inc., 820 F.3d 1316, 1322 (Fed. Cir. 2016).  The claim's

scope "must be construed in order to identify the non-functional aspects of the design"

when a design contains both functional and nonfunctional elements.  Id. at 1320 (quoting

OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997)).

    In the second step, the properly construed claim is compared to the accused

product to determine whether all of the claim limitations are present.  See Catalina

Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1285 (Fed. Cir. 2002).  This is a

question of fact.  Id.  In making this comparison, the fact-finder applies the "ordinary

observer" test, which requires the patentee to establish that "an ordinary observer,

familiar with the prior art designs, would be deceived into believing that the accused

product is the same as the patented design."  Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d

1294, 1303 (Fed. Cir. 2010) (citing Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665,

681 (Fed. Cir. 2008)).

    Summary judgment on the design patent issue is premature, and the Court will

schedule a Markman hearing with the Parties to address the meaning and scope of the

design patent claims.  The Court denies summary judgment on the design patent issue.

    In summary, for the reasons outlined above, summary judgment is not appropriate

for either Party due to numerous genuine disputes of material fact.  The Court denies both

Sturdy Gun Safe's Motion (Dkt. 56) and Rhino Metals' Cross-Motion for Summary

Judgment (Dkt. 59).

V.      **Other Pending Motions**

In addition to the motions for summary judgment, before the Court are the

following motions: Rhino Metals' Motion to Seal I; Rhino Metals' Motion to Seal II;

Sturdy Gun Safe's Motion to Seal; Sturdy Gun Safe's Motion to Exclude Expert Witness

Testimony; Rhino Metals' Motion to File Sur-Reply; and Sturdy Gun Safe's Motion to

Supplement Record.

A.      **Motions to Seal**

Three motions to seal are pending.  Rhino Metals' Motion to Seal I; Rhino Metals'

Motion to Seal II; Sturdy Gun Safe's Motion to Seal.  The Court's analysis begins by

determining the standard applicable to each motion.  Ctr. for Auto Safety v. Chrysler

Grp., LLC, 809 F.3d 1092, 1101 (9th Cir. 2016).  There exists a "general right to inspect

and copy public records and documents, including judicial records and documents."

Kamakana v. City and Cnty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting

Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 & n.7 (1978)).  There is a strong

presumption in favor of public access to judicial documents, unless the record is one

"traditionally kept secret."  Id. (citing Foltz v. State Farm Mut. Auto. Ins., Co., 331 F.3d

1122, 1135 (9th Cir. 2003)).

When a document has been offered in connection with a dispositive motion, the

party requesting to seal the document "must 'articulate compelling reasons supported by

specific factual findings' that outweigh the general history of access and the public

policies favoring disclosure."  Id. at 1178–79 (quoting San Jose Mercury News, Inc. v.

United States Dist. Ct., 187 F.3d 1096, 1102–03 (9th Cir. 1999)).  Hypothesis or

**OPINION AND ORDER - 39**

conjecture alone are not sufficient to warrant sealing.  Ctr. for Auto Safety, 809 F.3d at

1097.  The Court must weigh the articulated reasons against the competing public interest

in disclosure.  Kamakana, 447 F.3d at 1179.  Compelling reasons justify sealing where

the subject documents "might have become a vehicle for improper purposes, such as the

use of records to gratify private spite, promote public scandal, circulate libelous

statements, or release trade secrets.  The mere fact that the production of records may

lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not,

without more, compel the court to seal its records."  Id.

An exception exists to the strong presumption in favor of public access for

documents unrelated to the merits of the case.  See Phillips ex rel. Estates of Byrd v. Gen.

Motors Corp., 307 F.3d 1206, 1213–14 (9th Cir. 2002).  This exception may be

considered when "the public policies that support the right of access to dispositive

motions, and related materials, do not apply with equal force to non-dispositive

materials."  Kamakana, 447 F.3d at 1179; see also Foltz, 331 F.3d at 1135 ("[t]here are

good reasons to distinguish between dispositive and nondispositive motions").  As the

public has a lesser interest in materials unrelated to the disposition of a case, a party

seeking to seal such documents must show only good cause under Federal Rule of Civil

Procedure 26(c).  Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010); see

also Ctr. for Auto Safety, 809 F.3d at 1101.  Invocation of the exception requires a

"particularized showing" that "specific prejudice or harm will result" if the information is

disclosed.  Phillips ex rel. Estates of Byrd, 307 F.3d at 1210–11 (citation and internal

quotation marks omitted); see also Fed. R. Civ. P. 26(c).  The terms "dispositive" and

**OPINION AND ORDER - 40**

"non-dispositive" are not mechanical classifications in the context of motions to seal.

Ctr. for Auto Safety, 809 F.3d at 1098–99.  In order to apply the lesser good cause

standard, the Court must conclude that the subject material is "unrelated or only

tangentially related, to the underlying cause of action."  Pinto, 605 F.3d at 678 (quoting

Kamakana, 447 F.3d at 1179).

Rhino Metals filed its first motion to seal on April 13, 2020.  The Motion seeks to

have filed under seal the following documents: Declaration of Counsel in Support of

Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony ("Decl. in Supp. of

Sturdy Gun Safe's Mot. to Exclude Expert Testimony") Exhibits 1–3 (Dkt. 55); Rhino

Metals' Cross-Motion for Summary Judgment Memo; Rhino Metals' Statement of

Material Facts; the Suggs Declaration; Exhibits 4–6 and 15 to the Suggs Declaration

(Dkts. 59-9, 59-10, 59-11, & 59-20); and the Walters Declaration (collectively, "Rhino

Metals' Motion to Seal I Documents").  Rhino Metals' Motion to Seal I at 1–2.  Rhino

Metals asserts that compelling reasons exist for sealing each of the subject documents as

containing "confidential business information (i.e., specific sales, financial, business

strategy, product development, and/or technical information) that is not publicly

accessible and would cause Rhino competitive harm if disclosed publicly; and/or []

information that Defendant Sturdy Gun Safe, Inc. ("SGS") has designated as Confidential

under the governing Protective Order in this action."  Rhino Metals' Mem. P. & A. Supp.

Rhino Metals' Mot. to Seal I at 1–2 ("Rhino Metals' Motion to Seal I Memo" or "Rhino

Metals' Mot. to Seal I Mem.") (Dkt. 63-1).  Sturdy Gun Safe opposes the Motion.  See

Sturdy Gun Safe's Mem. Opp'n Rhino Metals' Mot. to Seal I (Dkt. 75).

**OPINION AND ORDER - 41**

The declaration of Suggs provided in support of Rhino Metals' Motion to Seal I addresses each of the subject documents individually. Decl. of Don Suggs Supp. Mot. to Seal I ("Suggs Mot. to Seal I Decl.") (Dkt. 63-2). The declaration states that Exhibit 1 to the Declaration of Counsel in Support of Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony contains references to Rhino Metals' confidential sales and financial information and other Rhino Metals confidential business strategy information. Id. at ¶ 3 at 2. Rhino Metals argues that Exhibit 2 contains references to Rhino Metals' confidential product development and technical decisions and information. Id. at ¶ 4 at 2–3. Rhino Metals argues that Exhibit 3 constitutes confidential Rhino Metals financial information. Id. at ¶ 5 at 3. Rhino Metals argues that Rhino Metals' Cross-Motion for Summary Judgment Memo, Rhino Metals' Statement of Material Facts, the Suggs Declaration, and the Walters Declaration contain references to "confidential sales and financial information and confidential product development and technical decisions and information." Id. at ¶¶ 6–8, 13 at 3–4, 5–6. Rhino Metals argues that Exhibits 5 and 6 to the Suggs Declaration constitute confidential sales information. Id. at ¶¶ 10–11 at 5. Rhino Metals argues that Exhibit 15 to the Suggs Declaration is a business agreement between Rhino Metals and a third-party, the terms of which Rhino Metals is obligated to not disclose to other parties. Id. at ¶ 12 at 5. Rhino Metals contends further that, with the exception of Exhibit 15 to the Suggs Declaration, all of the subject documents were designated as confidential under the governing protective order, none of the documents are publicly accessible, and disclosure of any of the documents would cause competitive harm. Id. at ¶¶ 3–13 at 2–6.

**OPINION AND ORDER - 42**

In opposing Rhino Metals' Motion to Seal I, Sturdy Gun Safe argues broadly that Rhino Metals has failed to meet its burden of demonstrating compelling reasons for sealing the subject materials.  Sturdy Gun Safe's Mem. Opp'n Rhino Metals' Mot. to Seal I at 2.  Despite its general opposition, Sturdy Gun Safe indicates that it does not contest the sealing of financial and marketing spreadsheets or Rhino Metals' agreement with a third-party.  Id. at 7–8.  Sturdy Gun Safe also does not object to redacting similar information from other subject documents.  Id. at 5, 6–7.  Rhino Metals argues that the compelling reasons standard should not be applied to Exhibits 1–3 to the Declaration of Counsel in Support of Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony because the documents were never referenced in either Party's dispositive motion— beyond a reference to service—and were offered in support of a "non-dispositive Motion to Exclude."  Id. at 3.  The Court acknowledges that Sturdy Gun Safe has expressed that it does not object, at least in principle, to the sealing and redaction of certain documents.  See Sturdy Gun Safe's Mem. Opp'n Rhino Metals' Mot. to Seal I at 5–8.

A party's claim that compelling reasons warrant sealing must be "supported by specific factual findings" that the requesting party's interests in sealing outweigh the public interests in disclosure.  Id. at 1178–79.  Even under the lesser good cause standard, a party must support its motion to seal with a "particularized showing" that "specific prejudice or harm will result" if the subject information is disclosed.  See Phillips ex rel. Estates of Byrd, 307 F.3d at 1210–11; see also Kamakana, 447 F.3d at 1180 ("Thus a *particularized showing* under the "good cause" standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive

motions." (emphasis added) (internal quotations omitted)).  The Court concludes that Rhino Metals has substantiated its statements sufficiently regarding the substance of the subject documents and assertions that disclosure will result in competitive harm and potential disclosure of confidential information, including third party confidential information that Rhino Metals is legally obligated to protect.  Upon consideration of Rhino Metals' Motion to Seal I, and all other papers and proceedings in this action, the Court grants Rhino Metals' Motion to Seal I (Dkt. 63) with respect to any confidential/sensitive business information, information subject to the protective order, third party confidential information, or information not cited by either Party.  Any non-confidential information cited by the Parties in their respective dispositive pleadings shall be filed publicly.

Rhino Metals filed its second Motion to Seal on August 24, 2020.  Rhino Metals seeks to have filed under seal the Suggs Deposition (Dkt. 93-2).  Rhino Metals' Mot. to Seal II at 1–2.  Rhino Metals contends that sealing portions of the transcript that have not been cited by either Party is appropriate because they are "not of immediate import" on the pending dispositive motions and redaction of sensitive information would be "costly, time-consuming and wasteful."  Rhino Metals' Mem. P. & A. Supp. Rhino Metals' Mot. to Seal II at 1–2 ("Rhino Metals' Mot. to Seal II Mem.") (Dkt. 100-1).  Rhino Metals contends further that sealing portions of the Suggs Deposition that have been cited by the Parties is appropriate because they have been designated as confidential under the governing Protective Order and contain information of the same type and nature as that identified in Rhino Metals' Motion to Seal I.  Id. at 3.  Rhino Metals contends

specifically that the "information relates to manufacturing techniques and related trade secrets that, if made known to Rhino's competitors, would provide them with an unfair advantage and destroy the investment and value that Rhino has created in this secret information, in significant part by virtue of its secrecy."  Id.

Sturdy Gun Safe does not oppose sealing the uncited portions of the Suggs Deposition.  Sturdy Gun Safe's Mem. Supp. Partial Opp'n Rhino Metals' Mot. to Seal II at 2 (Dkt. 103).  Sturdy Gun Safe does oppose sealing cited portions of the Suggs Deposition that it contends touch on the functionality of the Ironworks Design.  Id. at 2–3.

As the Suggs Deposition was filed in support of Sturdy Gun Safe's Opposition to Rhino Metals' Cross-Motion for Summary Judgment, Rhino Metals must show a compelling reason for the Court to maintain the document under seal.  See Ctr. for Auto Safety, 809 F.3d at 1101.  Rhino Metals has not carried its burden in regard to the non-confidential portions of the Suggs Deposition cited by the Parties in their respective dispositive motion briefings.  Rhino Metals has sufficiently shown a compelling reason to seal with regard to the portions of the Suggs Deposition that have not been cited by either Party.  Rhino Metals asserts that the Suggs Deposition contains information related to manufacturing techniques and trade secrets, and argues that disclosure would provide its competitors with an unfair advantage and injure its investment.  Rhino Metals' Mot. to Seal II Mem. at 3.  Upon consideration of Rhino Metals' Motion to Seal II, and all other papers and proceedings in this action, the Court grants in part Rhino Metals' Motion to Seal II (Dkt. 100) with respect to any confidential/sensitive business information,

**OPINION AND ORDER - 45**

information subject to the protective order, third party confidential information, or information not cited by either Party.  The Court denies in part Rhino Metals' Motion to Seal II as it relates to any non-confidential information cited by the Parties in their respective dispositive pleadings.

Sturdy Gun Safe filed Sturdy Gun Safe's Motion to Seal on May 7, 2020.  The Motion seeks to seal portions of the following documents: Exhibits 27, 45, and 57 to the Simler Declaration (Dkts. 59-33, 59-51, 59-63); Rhino Metals' Cross-Motion for Summary Judgment Memo; and Rhino Metals' Statement of Material Facts (collectively, "Sturdy Gun Safe's Motion to Seal Documents").  Id. at 1–2.  Sturdy Gun Safe argues that a compelling reason exists for sealing each of the subject documents.  Sturdy Gun Safe identifies information in Exhibit 27 to the Simler Declaration as providing "the exact number of safes Sturdy Safe has sold since July 13, 2017, that contain the particular finishes in question."  Sturdy Gun Safe's Mem. Supp. Sturdy Gun Safe's Mot. to Seal ("Sturdy Gun Safe's Mot. to Seal Mem.") at 4–5 (Dkt. 77-1).  Exhibit 45 to the Simler Declaration contains confidential financial records, including cost figures for products, packages, and features; suggested retail prices; and estimated profit margins.  Id. at 5. Exhibit 57 to the Simler Declaration contains redacted copies of customer invoices, which include the names and cities of specific customers.  Id. at 6.  Rhino Metals' Cross-Motion for Summary Judgment Memo contains a partial sentence that refers to a specific percentage breakdown of Sturdy Gun Safe's sales since mid-2017, including particular features and finishes.  Id. at 7.  Portions of Rhino Metals' Statement of Material Facts contain the same percentage breakdown and associated cost of production figures.  Id.

**OPINION AND ORDER - 46**

Rhino Metals does not oppose Sturdy Gun Safe's Motion to Seal.  <u>See</u> Rhino Metals'

Non-Opp'n Mot. Seal at 1–2 (Dkt. 82).

Sturdy Gun Safe has articulated compelling reasons with regard to Exhibit 57 to

the Simler Declaration and the potential disclosure of private customer information.  The

Court finds that the privacy interests of Sturdy Gun Safe's individual customers and the

risk that competitors might attempt to directly solicit those individuals outweighs the

public interest in disclosure.  In support of sealing the other subject materials, Sturdy Gun

Safe argues that the relevant information is not publicly available and could be used by

its competitors to gain an unfair advantage.  <u>See</u> Sturdy Gun Safe's Mot. to Seal Mem. at

5–8.  Upon consideration of Sturdy Gun Safe's Motion to Seal, and all other papers and

proceedings in this action, the Court grants Sturdy Gun Safe's Motion to Seal (Dkt. 77)

with respect to any confidential/sensitive business information, information subject to the

protective order, third party confidential information, or information not cited by either

Party.  Any non-confidential information cited by the Parties in their respective

dispositive pleadings shall be filed publicly.

### B.    Motion to File Sur-Reply

Rhino Metals filed Rhino Metals' Motion to File Sur-Reply on April 29, 2020.

<u>See</u> Rhino Metals' Mot. Leave File Sur-Reply Opp'n Sturdy Gun Safe's Mot. Exclude

Expert Witness Test. (Dkt. 73).  Sturdy Gun Safe opposes Rhino Metals' Motion to File

Sur-Reply, arguing that it did not raise new arguments in its Reply in Support of Sturdy

Gun Safe's Motion to Exclude Expert Witness Testimony (Dkt. 71).  <u>See</u> Sturdy Gun

Safe's Mem. Opp'n Rhino Metals' Mot. Leave File Sur-Reply Opp'n Sturdy Gun Safe's

**OPINION AND ORDER - 47**

Mot. Exclude Expert Witness Test. at 2 (Dkt. 74).  The Court has discretion in determining whether to permit a sur-reply.  See Sekera v. Allstate Ins. Co., 763 F. App'x 629, 632 (9th Cir. 2019) (holding that the district court did not abuse its discretion in denying Sekera's request to file a sur-reply because Allstate did not introduce new arguments in its reply).  Upon consideration of Rhino Metals' Motion to File Sur-Reply, Sturdy Gun Safe's Reply in Support of Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony, Sturdy Gun Safe's Memorandum in Opposition to Rhino Metals' Motion to File Sur-Reply, and all other papers and proceedings in this action, the Court grants Rhino Metals' Motion to File Sur-Reply (Dkt. 73) and deems it so filed.

### C.    Motion to Exclude Expert Witness Testimony

Sturdy Gun Safe filed Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony on March 23, 2020.  See Sturdy Gun Safe's Mot. Exclude Expert Witness Test. (Dkt. 54).  Sturdy Gun Safe seeks to exclude certain anticipated expert testimony by Kyle Walters offering opinions on consumer confusion, secondary meaning, and patent infringement on the grounds that Walters lacks expertise and sufficient supporting facts to offer certain portions of his testimony.  See Mem. Supp. Sturdy Gun Safe's Mot. Exclude Expert Witness Test. at 6–22 ("Sturdy Gun Safe's Motion to Exclude Mem.") (Dkt. 54-1).  Rhino Metals opposes Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony.  See Rhino Metals' Mem. Opp'n Sturdy Gun Safe's Mot. Exclude Expert Witness Test. (Dkt. 61).

The Court has discretion to allow expert testimony based on whether (1) the testimony assists the trier of fact either to understand the evidence or to determine a fact

in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the

product of reliable methods and principles; and (4) the witness is sufficiently qualified to

render the opinion.  See Fed. R. Evid. 702.  To be qualified to render an expert opinion,

the witness must have some specialized knowledge, skill, experience, training, or

education.  See id.

The Parties do not contest that Walters has established experience and expertise in

manufacturing, marketing, and selling gun safes.  See Sturdy Gun Safe's Decl. of

Counsel Supp. Sturdy Gun Safe's Mot. Exclude Expert Witness Test. Ex. 1  ¶¶ 1–10 at

4–5 ("Walters Report I") (Dkt. 55).  The Court denies the motion to exclude Walters'

testimony based on his experience and qualifications in marketing and selling gun safes.

See Walters Report I ¶¶ 31–33, 38 at 11–13.  Walters has not established, however, that

he has experience or expertise working with design patents.  See generally Walters

Report I; Sturdy Gun Safe's Decl. of Counsel Supp. Sturdy Gun Safe's Mot. Exclude

Expert Witness Test. Ex. 2 ("Walters Report II") (Dkt. 55).  In light of the postponement

of the design patent issues until a Markman hearing can be held, the Court does not reach

the admissibility of Walters' testimony as a patent expert at this time.  Upon

consideration of Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony, and all

other papers and proceedings in this action, the Court denies in part Sturdy Gun Safe's

Motion to Exclude Expert Witness Testimony as it pertains to Walters' testimony based

on his experience and qualifications in marketing and selling gun safes, and defers in part

Walters' testimony as a patent expert (Dkt. 73).

**OPINION AND ORDER - 49**

### D.      Motion to Supplement Record

Sturdy Gun Safe filed Sturdy Gun Safe's Motion to Supplement Record on August 26, 2020.  See Sturdy Gun Safe's Mot. Suppl. R.  Rhino Metals does not oppose Sturdy Gun Safe's Motion to Supplement Record but asks the Court to limit the scope for which the supplement is considered.  See Rhino Metals' Resp. & Non-Opp'n in Part to Sturdy Gun Safe's Mot. Suppl. R. Opp'n Rhino Metals' Cross-MSJ & Supp. Sturdy Gun Safe's MSJ ("Rhino Metals' Response to Motion to Supplement Record") at 1–2 (Dkt. 102).  Upon consideration of Sturdy Gun Safe's Motion to Supplement Record, Rhino Metals' Response to Motion to Supplement Record, and all other papers and proceedings in this action, the Court grants Sturdy Gun Safe's Motion to Supplement Record (Dkt. 101).

### CONCLUSION

The Court holds that there are genuine, triable issues of material fact for all claims in this action.  Summary judgment is therefore inappropriate for the claims of federal trade dress infringement and unfair competition, common law trade dress infringement and unfair competition, and dilution under the Idaho Code.  Summary judgment on the claims of design patent infringement is premature and a Markman hearing will be held to allow the Parties to present additional arguments.  The Court grants Rhino Metals' Motion to Seal I, Sturdy Gun Safe's Motion to Seal, Rhino Metals' Motion to File Sur-Reply, and Sturdy Gun Safe's Motion to Supplement Record.  The Court grants in part and denies in part Rhino Metals' Motion to Seal II.  The Court denies in part and defers in part Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

(1)     Sturdy Gun Safe's Motion for Summary Judgment (Dkt. 56) is DENIED.

(2)     Rhino Metals' Cross-Motion for Summary Judgment (Dkt. 59) is DENIED.

(3)     A Markman hearing shall be held on a date to be determined to address the meaning and scope of the Parties' design patent claims.

(4)     Rhino Metals' Motion to Seal I (Dkt. 63) is GRANTED.

(5)     Rhino Metals' Motion to Seal II (Dkt. 100) is GRANTED IN PART as it pertains to portions of the Suggs Deposition containing confidential/sensitive business information, information subject to the protective order, third party confidential information, or information not cited by either Party and DENIED IN PART as it pertains to the non-confidential portions of the Suggs Deposition cited by the Parties in their respective dispositive motion briefings.

(6)     Sturdy Gun Safe's Motion to Seal (Dkt. 77) is GRANTED.

(7)     The Parties shall confer and file redacted, public versions of the documents designated filed under seal by this Opinion and Order on or before May 3, 2022.

(8)     Rhino Metals' Motion to File Sur-Reply (Dkt. 73) is GRANTED.

(9)     Rhino Metals' Sur-Reply in Opposition to Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony (Dkt. 73-2) is deemed filed.

(10)    Sturdy Gun Safe's Motion to Exclude Expert Witness Testimony (Dkt. 54)

is DENIED IN PART as it pertains to Walters' testimony based on his

experience and qualifications in marketing and selling gun safes, and

DEFERRED IN PART as it pertains to Walters' testimony as a patent

expert.

(11)   Sturdy Gun Safe's Motion to Supplement Record (Dkt. 101) is GRANTED.

(12)   Declaration of Counsel in Support of Sturdy Gun Safe's Motion to

Supplement Record in Opposition to Rhino Metals' Cross-Motion for

Summary Judgment and in Support of Sturdy Gun Safe's Motion for

Summary Judgment (Dkt. 101-1) is deemed filed.

(13)   The Court will set a date for a scheduling conference.


DATED: March 4, 2022

 /s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.